UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LADARION D. STANTON** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Case No. 19-699 (RJL) |
| ) | |
| **JAMES A. JACOBSON** ) | |
| **Major General, U.S. Air Force,** ) | |
| **UNITED STATES,** *et al.*, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION**
(April 3, 2020) [##s 1, 14, 17]

Petitioner Ladarion Stanton ("Stanton" or "petitioner"), a former airman in the United States Air Force, seeks collateral review of his conviction for petty larceny and the punishment of "no sentence" imposed by the military justice system.[1] Respondent Major James Jacobson ("Jacobson") was the "Convening Authority" of Stanton's general court-martial and imposed the sentence on Stanton after his case wended its way through the military appeals process. (The other respondent is the United States.) The gravamen

---

[1] Stanton styled this matter as a petition for habeas corpus under 28 U.S.C. § 2241 because "the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces." *Parisi v. Davidson*, 405 U.S. 34, 39 (1972). However, as I will explain below, Stanton is now discharged from the armed forces, and he is not in custody. Therefore, this Court does not have jurisdiction under 28 U.S.C. § 2241(c), which precludes granting habeas relief unless a petitioner is in custody. However, Stanton also asserts jurisdiction under 28 U.S.C. § 1331, *see* Pet. at 3, and this Court does have jurisdiction to entertain a collateral attack on Stanton's conviction under this provision, *see New v. Rumsfeld*, 448 F.3d 403, 406 (D.C. Cir. 2006).

of Stanton's petition is that, after his earlier convictions on several unrelated charges were overturned and remanded to Jacobson for retrial and resentencing, Jacobson accepted Stanton's offer to resolve his case via a "discharge in lieu of court-martial." Stanton believed this resolution would not only result in vacating the charges overturned on appeal but also the charge of larceny, to which he had already pled guilty and which had already been affirmed. Stanton also believed the discharge would leave the military without any jurisdiction over him. Although respondents acknowledge, as an administrative matter, that Stanton was discharged when Jacobson accepted Stanton's discharge in lieu of court-martial, they nonetheless contend that this discharge had *no* effect on Stanton's larceny conviction. Indeed, they insist that the military has retained jurisdiction over Stanton's court-martial. The parties' cross-motions for summary judgment are now ripe. After extensive briefing and with the benefit of oral argument,[2] I have concluded that Stanton's larceny conviction did survive his administrative discharge. Therefore, I GRANT respondents' motion for summary judgment, DENY petitioner's motion for summary judgment, and DISMISS petitioner's petition for habeas corpus.

---

[2] As I explain below, oral argument on Stanton's motion for preliminary injunction was held before one of my colleagues before the case was transferred to me on August 5, 2019. I have reviewed the transcript of those proceedings.

2

## BACKGROUND

The parties generally agree on the facts underlying this collateral attack on Stanton's conviction.[3] The matter began with a general court-martial, convened by Jacobson. Decl. of Maj. Matthew Bush ("Bush Decl.") [Dkt. #14-4] ¶ 1. On June 6, 2016 Stanton went to trial and four days later was convicted of two specifications[4] of sexual assault and one specification of aggravated sexual contact, Resp't's Statement of Material Facts ("SOMF") ¶ 2.[5] Prior to his trial, Stanton pled guilty to one charge of larceny. *Id.* As punishment for both the larceny and sexual assault convictions, Stanton was sentenced to confinement for 96 months and a dishonorable discharge.[6] *Id.* ¶ 3.

---

[3] Indeed, in response to the Government's statement of material facts, Stanton declares that "[o]nly one material fact in this case is in dispute, and it is not advanced by Respondent in this Court." Pet'r's Opp'n 2. In reply, the government agrees, noting that "Stanton does not dispute the material facts advanced by [the Government] in this case, except to disagree with [the government] regarding the legal consequences of Stanton's previously affirmed larceny conviction." Resp't's Reply 1.

[4] "[A] 'specification is a plain, concise, and definite statement of the essential facts constituting the offense charged.'" *United States v. Fosler*, 70 M.J. 225, 234 (C.A.A.F. 2011) (Effron, C.J., dissenting) (quoting *Manual for Courts-Martial, United States* Rule ("R.C.M.") 307(c)(3) (2008 ed.)). By contrast, "[a] charge states the article of the UCMJ, law of war, or local penal law . . . which the accused is alleged to have violated." R.C.M. 307(c)(2) (2019 ed.). Multiple specifications can therefore appear under the same "charge."

[5] Because the parties generally agree (and because Stanton did not file an opposition to the government's SOMF), I will cite to the government's SOMF whenever applicable and not directly disputed by Stanton. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of a fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

[6] His sentence included other punishments, but those listed are the ones most relevant to the present petition. SOMF ¶ 3.

Stanton then appealed his conviction and sentence. *Id.* ¶ 4. On February 7, 2018, the Air Force Court of Criminal Appeals ("AFCCA") affirmed Stanton's larceny conviction but set aside his convictions on the sexual assault charges and authorized a rehearing on the findings and as to the sentence.[7] *Id.* A new trial was set for July 23, 2018 on the sexual assault charges, but the alleged sexual assault victims notified the Air Force that they no longer wished to testify at, or participate in, Stanton's rescheduled court-martial. *See id.* ¶ 5. Accordingly, Jacobson withdrew the sexual assault charges against Stanton without prejudice on July 20, 2018. *Id.* ¶ 6.

At this point, Stanton faced a re-sentencing hearing only on his guilty plea to larceny. Seeking to avoid this hearing, Stanton requested to be administratively discharged in lieu of a trial by court-martial pursuant to Chapter 4 of Air Force Instruction ("AFI") 36-3208 ("Chapter 4").[8] *Id.* ¶ 7. Chapter 4 provides that airmen who are "subject to trial by court-martial" may "[r]equest discharge in lieu of trial," AFI 36-3208 4.1.1, provided that "charges have been preferred with respect to an offense for which a punitive discharge is authorized," *id.* 4.1.2. In his request for a discharge under

---

[7] At the time of Stanton's sentencing, courts martial imposed a single sentence for all offenses. *See* R.C.M. 1002(b) (2016 ed.) ("Sentencing by a court-martial is unitary. The court-martial will adjudge a single sentence for all the offenses of which the accused was found guilty."); *see also* R.C.M. App'x 21 Rule 1006(c) (recognizing same unitary sentencing concept under 2012 rules that applied to Stanton's sentencing). Therefore, overturning Stanton's conviction on any charge or specification required reconsideration of his entire sentence.

[8] Available at https://static.e-publishing.af.mil/production/1/af_a1/publication/afi36-3208/afi36-3208.pdf. Although the version of AFI 36-3208 available at this website carries an issuance date of 14 June 2018 (and a reissuance date of 13 June 2019), the applicable provisions of Chapter 4 appear not to have changed since at least 2013.

4

Chapter 4, Stanton affirmed his understanding that he could be discharged under other than honorable conditions. SOMF ¶ 7. Matthew Bush, the Chief of Military Justice in the Office of the Staff Judge Advocate for the Air Force District of Washington ("AFDW"), spoke with Stanton's defense counsel regarding Stanton's Chapter 4 request *before* Bush presented Stanton's request to Jacobson. *Id.* ¶ 9. During this conversation, Bush noted the Government's belief that Jacobson had limited, to no authority, to disturb the affirmed larceny conviction.[9] *Id.*; Pet'r's Opp'n 2. Stanton's counsel, however, confirmed Stanton's desire to continue nonetheless with the Chapter 4 request. SOMF ¶ 9.

AFDW proceeded to consider Stanton's request for discharge under Chapter 4. On July 23, 2018, a staff judge advocate in Jacobson's office wrote up a legal review recommending that Jacobson grant the request. *See* Legal Review – Request for Discharge in Lieu of Trial by Court-Martial, *United States v. A1C Ladarion D. Stanton* ("Legal Review") [Dkt. #1-2]. The review noted that although Stanton faced up to six months' confinement and a bad conduct discharge for larceny of less than $500 in property (i.e., an iPad), the chance of a court-martial panel actually sentencing him to a punitive discharge was "incredibly low." *Id.* at 1–2. What's more, the review reported that the larceny victim supported Stanton's request for a discharge in lieu of court

---

[9] According to Stanton, the sole material fact in the case that is in dispute is whether or not Mr. Stanton's former counsel agreed with Bush about the Government's inability to disturb Stanton's larceny conviction. *See* Pet'r's Opp'n 2. Because I conclude that this fact is ultimately immaterial to my legal analysis, I include here the version of the facts set forth by Stanton.

5

martial. *Id.* Ultimately, on July 25, 2018, Jacobson approved Stanton's Chapter 4 request and directed that Stanton "be discharged with an Under Other Than Honorable Conditions service characterization." SOMF ¶ 10 (quoting Dkt. #1-1) (internal quotation marks omitted). A legal staffer in Jacobson's office then issued an order in Stanton's court-martial proceeding stating that "[a] rehearing was found to be impracticable" and that "[a] sentence providing for 'no punishment' is approved." General Court-Martial Order No. 45 [Dkt. #1-3].

The case then returned automatically to the AFCCA, over Stanton's strong objection. Shortly after the AFCCA re-docketed the record of Stanton's case, *see* SOMF ¶ 11, Stanton argued that the court lacked jurisdiction over him because he had been administratively discharged and was not subject to a sentence that would provide the court a basis for continuing jurisdiction, *see* Stanton's AFCCA Mot. to Dismiss, Def.'s Opp'n to Mot. for Preliminary Injunction Ex. C [Dkt. #10-1 at 5]. After the Government filed an opposition, the court summarily denied the motion. *See id.* at 1. Stanton then petitioned the Court of Appeals for the Armed Forces for a writ of mandamus, but this petition was also summarily denied. *See Stanton v. United States*, 78 M.J. 258 (CAAF 2018). Undaunted, Stanton filed the present petition for habeas corpus and a motion for a preliminary injunction on March 12, 2019. *See* Petition [Dkt. #1]; First Mot. for a Preliminary Injunction [Dkt. #2]. The case was assigned to one of my colleagues who set a briefing schedule and held oral argument on April 18, 2019. *See* Minute Entry for Proceedings Held on 4/18/2019. After hearing argument, my colleague declined to grant

a preliminary injunction but set a further briefing schedule for summary judgment motions. *See id.*

Meanwhile, proceedings continued on a parallel track in the military justice system. On March 21, 2019, the AFCCA remanded the case on procedural grounds, noting that Stanton's no-punishment sentence was imposed in an order signed by a member of Jacobson's staff, when only Jacobson himself could impose the sentence. AFCCA Order Remanding Case [Dkt. #8]. After Jacobson signed the "no punishment" order himself on remand, *see* SOMF ¶ 14, the case returned to the AFCCA, which issued an opinion on July 16, 2019. *See United States v. Stanton*, No. ACM 39161 (reh) (AFCCA July 16, 2019) ("*Stanton*") [Dkt. #20-1]. In its opinion, the AFCCA rejected two arguments Stanton had raised before it. First, the court concluded that it did retain jurisdiction over Stanton even after his administrative discharge. *Stanton* at 4–5. Second, the court declined to set aside Stanton's larceny conviction in order to avoid a "manifest injustice." Thus, as things stand now, Stanton has been administratively discharged from the Air Force under other than honorable conditions and with an affirmed conviction for larceny for which he received a punishment of "no sentence."

## LEGAL STANDARDS

Both parties seek summary judgment. Summary judgment is appropriate "only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Airlie Foundation v. IRS*, 283 F. Supp. 2d 58, 61 (D.D.C. 2003) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)); *see also* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there

7

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). In determining whether there exists a genuine issue of material fact, the court must view all facts, and reasonable inference drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The legal question at issue on summary judgment involves review of the military justice system's jurisdiction over Stanton. Article III courts have long had the authority to consider collateral attacks challenging a court-martial tribunal's jurisdiction to try a case. *See In re Grimley*, 137 U.S. 147, 150 (1890) ("It cannot be doubted that the civil courts may in any case inquire into the jurisdiction of a court-martial, and if it appears that the party condemned was not amenable to its jurisdiction, may discharge him from the sentence."). In cases involving collateral attacks by members of the military who are not in custody, our Circuit Court has opined that in order "for a court to grant any relief to such plaintiffs, the military court judgment must be 'void,' meaning the error must be fundamental."[10] *Sanford v. United States*, 586 F.3d 28, 32 (D.C. Cir. 2009) (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 753 (1975)).

---

[10] Filing his own motion for summary judgment before the military justice system had completed its process, Stanton argued that he was not collaterally attacking a completed

8

Stanton identifies both jurisdictional and non-jurisdictional errors here. Jurisdictional errors are, of course, fundamental. *See Councilman*, 420 U.S. at 747 (stating district courts may grant relief where court martial suffered from "*lack of jurisdiction* or some other equally fundamental defect" (emphasis added)); *see also Toth v. Quarles*, 350 U.S. 11, 14 (1955) ("[I]t has never been intimated by this Court . . . that Article I military jurisdiction could be extended to civilian ex-soldiers who had severed all relationship with the military and its institutions."). Whether a non-jurisdictional error is fundamental "may turn on [1] the nature of the alleged defect, and [2] the gravity of the harm from which relief is sought. Moreover, both factors must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." *Sanford*, 586 F.3d at 307.

## ANALYSIS

For the most part, the Government and Stanton talk past each other in their motions. The Government contends that Jacobson lacked the authority to vacate Stanton's already-affirmed conviction on remand and that the AFCCA properly retained jurisdiction over Stanton's sentence even post-discharge. Stanton argues that Chapter 4 authorized Jacobson to grant a discharge in lieu of a court-martial regardless of the AFCCA's previous decision, that Stanton was entitled to the full benefit of his bargain (a

---

court martial but rather attacking the right of a court martial to try him in the first place, which our Circuit Court has recognized as an exception to the general requirement that servicemembers exhaust the military justice process before seeking review in a civilian court. *See* Pet'r's Opp'n at 4–5 (citing *New v. Cohen*, 129 F.3d 639, 644 (D.C. Cir. 1997)). As the military justice process has now run its course in any event, I need not consider whether Stanton was required to exhaust its processes.

discharge without a conviction), and that the AFCCA lacked jurisdiction over Stanton once he was discharged from the Air Force by Jacobson. I conclude that because Stanton's conviction was indeed final before he even initiated the discharge in lieu of court-martial process, that conviction (and the sentence of "no punishment") survived his administrative "discharge in lieu of court-martial." How so?

A. **The Larceny Conviction Was Final**

At the time Stanton requested a discharge in lieu of court-martial, the conviction had already been affirmed by the AFCCA, which, according to statute, executive order, and military legal precedent, accorded it finality. First, under the Uniform Code of Military Justice ("UCMJ"), the AFCCA's findings as to guilt are final and binding (both on the Air Force and on this Court):

> The appellate review of records of trial provided by this chapter [and] the ... findings ... of courts-martial as ... affirmed as required by this chapter ... are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to [articles 73 and 74 of this title[11]] and the authority of the President.

10 U.S.C. § 876.

Next, the Manual for Courts Martial ("MCM"), an Executive Order issued by the President, recognizes that a military Court of Criminal Appeals may affirm some findings

---

[11] Article 73 deals with newly discovered evidence or fraud on the court. *See* 10 U.S.C. § 873. Article 74 provides for remission or suspension of "any *sentence*" by certain officials but says nothing about convictions. 10 U.S.C. § 874 (emphasis added). Neither provision applies here.

10

of guilt and effectively lock them in while ordering further proceedings below (which must be consistent with those affirmed findings):

> If a superior competent authority has approved some of the findings of guilty and has authorized a rehearing as to other offenses and the sentence, the convening authority may, unless otherwise directed, reassess the sentence based on *the approved findings of guilty* and dismiss *the remaining charges*. Reassessment is appropriate only where . . . the reassessed sentence is *appropriate in relation to the affirmed findings of guilty*.

R.C.M. 1107(e)(2)(B)(iii) (2016 ed.) (emphasis added); *see also* R.C.M. 1107(e)(1)(B)(iv) (2012 ed.) (same). By contrast, the MCM nowhere authorizes a convening authority to dismiss already-affirmed charges.

Finally, as the Government points out, the military courts long ago held that a convening authority was not empowered to overturn an already-affirmed conviction in a case like Stanton's:

> Nothing in the terms of the remand [in the case under review] . . . permitted the convening authority to take any action as to the findings of guilty. Indeed, those findings had already been affirmed by the Court of Military Review . . . . "[A]fter remand of a case, a lower court, *or in the military any lower echelon*, is without power to modify, amend, alter, set aside, or in any manner disturb or depart from the judgment of the reviewing court."

*United States v. Montesinos*, 28 M.J. 38, 43 (C.M.A. 1989) (quoting *United States v. Stevens*, 27 C.M.R. 491, 492 n.1 (C.M.A. 1959)). Thus, Stanton's conviction was final and unalterable *before* he sought a discharge in lieu of court-martial from Jacobson.

Because Stanton did not frame his argument in terms of finality, he does not *directly* challenge the finality of the conviction. Instead, he contends that the Chapter 4 discharge in lieu of court-martial *could* set aside the conviction. As I explain below, I disagree.

11

## B. The Discharge in Lieu of Court-Martial Had No Effect on Stanton's Conviction

Stanton's successful request for a discharge in lieu of court-martial had no effect on his already-final larceny conviction.

Several CAAF cases, taken together, provide a framework for considering Stanton's jurisdictional challenge here. First, longstanding CAAF precedent establishes that a servicemember's administrative discharge has no effect on a pre-existing conviction (and sentence), nor on further actions by the military justice system pursuant to that conviction (and sentence):

> This Court has held that, if a person is discharged administratively while appellate review is pending, there is "no good reason to hold the findings and sentence of the court-martial are impaired by the discharge." Similarly, the power of review authorities over the court-martial is unaffected by the administrative discharge. Moreover, the administrative discharge does not negate the responsibility of the convening authority to act on the findings and sentence; nor does it restrict his power to do so.

*Steele v. Van Riper*, 50 M.J. 89 (C.A.A.F. 1999) (quoting *United States v. Speller*, 24 C.M.R. 173, 178 (C.M.A. 1957)). Next, another CAAF case explains that when a finding of guilt is affirmed on appeal but a sentence is vacated, the military courts retain jurisdiction even when a defendant has been administratively discharged in the meantime:

> The question before us is, when an appellate court approves the findings of a court-martial, disapproves the sentence, and orders a sentence rehearing, does a post-trial administrative discharge preclude completion of the sentence proceedings ordered by an appellate court? . . . [O]ur precedent recognizes that there is "continuing jurisdiction" over a case that has been tried and in which the accused was convicted while in a status that subjected him or her to the UCMJ.

*United States v. Davis*, 63 M.J. 171, 176 (C.A.A.F. 2006).[12] A third CAAF case applying *Steele* explains that while a pretrial administrative discharge terminates a court-martial's jurisdiction over the accused, "[a] post-trial administrative discharge operates to remit the unexecuted punitive discharge portion of an adjudged court-martial sentence." *United States v. Watson*, 69 M.J. 415, 416–17 (C.A.A.F. 2011). Finally, a fourth CAAF case, albeit in a different factual context, makes clear that a convening authority's powers on remand are circumscribed to just those necessary to accomplish what was ordered by the superior court:

> It is well established that in a case subject to review under Article 66, UCMJ, a convening authority "loses jurisdiction of the case once he has published his action or has officially notified the accused' of that action. At that point, the 'only further contact that the convening authority has with the case occurs in the event of a remand" or the exercise of his clemency powers. . . . [E]ven when acting on remand, a convening authority may still only take action "that conforms to the limitations and conditions prescribed by the remand." The AFCCA's remand "did not purport to confer upon [the] convening authority all the powers that a convening authority would have possessed on the initial appellate review of the case pursuant to Article 60." Instead, the convening authority acted "by delegation from the [Court of Criminal Appeals]—to which he was subordinate" because he possessed "no independent statutory authority at that time to act on the findings and sentence."

---

[12] Stanton attempts to distinguish both *Steele* and *Davis* on the grounds that they both involved servicemen who were administratively discharged by mistake. This matters, he contends, because while an administrative error does not divest the military courts of jurisdiction, a discharge pursuant to a binding contract does. But *Steele* cites *Speller* for its jurisdictional holding, and *Speller* cites cases involving a variety of discharges in different contexts dating back at least as far as the latter half nineteenth century. *See Speller*, 24 C.M.R. at 176 ("[T]he general rule has long obtained that jurisdiction once acquired is not lost by a change in the status of a defendant."); *see also id.* (citing *Carter v. McClaughry*, 183 U.S. 365, 383 (1902); *Coleman v. Tennessee*, 97 U.S. 509 (1878)). So whether the discharge was based on mistake is irrelevant. I respond to Stanton's contractual argument below.

*United States v. Carter*, 76 M.J. 293, 295–96 (C.A.A.F. 2017) (quoting *Montesinos*, 28 M.J. at 42, 44). Taken together, these four cases stand for the proposition that a finding of guilty, once affirmed on appeal, remains final on remand despite an intervening administrative discharge and that the convening authority has no power over this finding of guilty on remand for resentencing. In other words, in cases like Stanton's, Jacobson could not set aside Stanton's conviction.

Stanton makes three arguments why his conviction should be (or, more accurately, was) set aside based on the discharge in lieu of a court martial. First, he contends that different military legal precedent stands for the proposition that a request for discharge in lieu of a court-martial that is granted after a conviction causes that conviction to be vacated. In *United States v. Woods*, 26 M.J. 372 (C.M.A. 1988), the Court of Military Appeals did indeed order a court-martial conviction to be "abated" because of a discharge in lieu of court-martial that was granted after the conviction was entered. In addition to that factual setup, there is language in the opinion that is helpful to Stanton:

> The power of the Secretary to approve or disapprove resignations in accordance with his own regulations and the power of a convening authority to convene courts-martial harmoniously coexist. Just as we have recognized that an administrative action cannot divest a court-martial of its judicial power, we likewise recognize that a court-martial can neither deprive the Secretary of his powers nor defeat a lawful agreement between an accused and the secretary.

*Woods*, 26 M.J. at 375.[13] Petitioner also cites *United States v. Patterson*, 1998 WL 433963 (N.M. Ct. Crim. App. July 7, 1998), in which the Navy-Marine Court of Criminal

---

[13] A concurrence in the opinion has even better language for petitioner:

14

Appeals similarly overturned a conviction that was followed by an approved request for discharge in lieu of court-martial, *id.* at *2.

But there are four crucial differences that lead me to disregard *Woods* and *Patterson* in this case. First, in both cases, the *request* for discharge was made *before* the actual finding of guilty was entered.[14] Second, in both cases, it was the negligence (in *Patterson*, an outright misrepresentation) of military officials that led to the discharge not being approved until after the conviction had been entered. Once again, in the present case, the discharge was not even requested until after the conviction had been approved by the convening authority (and affirmed on appeal). Third, relatedly, the benefit for which the defendants in *Woods* and *Patterson* bargained was that there would be no court-martial at all. Just because one was ultimately conducted (again, because of negligence on the part of military officials charged with processing the discharge request) does not change the nature of the original bargain. Here, by contrast, the court martial had already happened. What was bargained away was a re-sentencing hearing.[15] So it

---

> It seems clear that [the Army's discharge in lieu of court-martial] Regulation contemplates that, if a resignation is accepted after a conviction has occurred, the result will be the same as if a court-martial had never taken place. Such an outcome seems implicit in the concept of a resignation in lieu of court-martial.

*Woods*, 26 M.J. at 375 (Everett, C.J., concurring).

[14] It is not clear to me that the Chapter 4 discharge in lieu of court-martial regulation was even intended to apply in a case like Stanton's, where a conviction had been affirmed on appeal, but I need not decide that question to conclude that there is a fundamental difference between a request made before a court-martial took place and one made after a court-martial's finding of guilty had been affirmed on appeal.

[15] Stanton disagrees with this characterization, as I address more fully below.

15

makes sense that here the sentence, rather than the court-martial itself, would be "abated." Finally, in both *Woods* and *Patterson*, the discharge was approved *before* the case ever went up for appellate review. Thus, at the time each defendant was actually discharged, the finding of guilty had not yet been affirmed on appeal and was not yet law of the case. In light of these differences, I do not find *Woods* and *Patterson* persuasive here.

Stanton's second argument is that he did not receive the benefit of his bargain with the Air Force. He argues that he forewent the statutory and constitutional rights afforded him at a court-martial sentencing rehearing in exchange for his case being resolved administratively instead of criminally. As such, he contends that the Air Force violated its contract with him by maintaining his conviction and imposing a sentence of no punishment. *See* Pet'r's Opp'n 7–8 (citing *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014) ("In interpreting the terms of a plea agreement, we look to principle of contract law."); *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006) ("[A] pretrial agreement is a constitutional rather than a commercial contract.")). I disagree. Stanton's case is simply different from the normal discharge in lieu of court-martial in that his was a discharge in lieu of re-sentencing. His *court-martial* had already taken place, and he faced no prospect of a new court-martial. Benjamin Beliles, Stanton's trial counsel who assisted him with the Chapter 4 request, insists that he believed the convening authority's understanding that nothing could be done about the affirmed larceny conviction was incorrect, *see* Decl. of Benjamin Beliles, Pet'r's Opp'n Ex. 1 ¶ 4, but even Beliles

acknowledges that the convening authority did not represent that he intended to do anything about that already-affirmed conviction, *see id.*

Another AFCCA case, which Stanton does not cite but did rely on before the AFCCA, is instructive because it demonstrates what true reliance by Stanton on receiving a discharge would have looked like. In *United States v. Perez*, No. ACM 38559, 2019 WL 1110433 (A.F. Ct. Crim. App. March 8, 2019), the AFCCA reviewed a situation almost identical to the one in this case—the AFCCA previously had affirmed a finding of guilt on one specification, set aside other specifications and the sentence, and remanded to the convening authority for further action, but on remand, the convening authority accepted a discharge in lieu of court-martial, *see id.* at *2. One key difference between *Perez* and Stanton's case, however, is that in *Perez*, the convening authority explicitly purported to set aside the affirmed conviction. *See id.* On appeal, the AFCCA made clear, consistent with its later ruling in Stanton's case, that the convening authority lacked the power to set aside an already-affirmed conviction. *See id.* at *4 ("[W]e find inconsistent with the remand and thus improper the convening authority's withdrawal and dismissal of Specification 4 . . . . Because this court had already affirmed Appellant's conviction . . . the convening authority could not dismiss the specification and charge."). But because the defendant in *Perez* had "*reasonably relied on the convening authority's belief* that he could withdraw and dismiss" the already affirmed charge, the AFCCA upheld the dismissal because it concluded that to do otherwise would be a "manifest injustice." *Id.* at *5 (emphasis added). Here, Stanton could not *reasonably* have relied on the convening authority's belief that he could dismiss Stanton's already affirmed

17

charge because, as Stanton himself agrees, the convening authority did not purport to believe that.[16] Here, Stanton's sentence was abated, which was the appropriate outcome for a discharge in lieu of a re-sentencing hearing.

Third, Stanton insists that the AFCCA had no jurisdiction at all after his administrative discharge and so erred in once more taking up his case after that discharge. Stanton cites *Clinton v. Goldsmith*, 525 U.S. 961 (1998), for this proposition, but his reliance is misplaced. In *Goldsmith*, the Supreme Court held that the Court of Appeals for the Armed Forces could not enjoin the Secretary of the Air Force from administratively discharging an airman simply because that airman was also serving out a sentence imposed by court-martial. *See id.* at 536–37. But here, the AFCCA made no attempt to interfere with Stanton's *discharge*; instead, it reviewed his conviction and sentence of no punishment. Stanton argues that the conviction itself was voided, causing the AFCCA to lose its jurisdiction, but as I have explained, the conviction survived his discharge. And there is no question that the AFCCA retains "jurisdiction over a case that has been tried and in which the accused was convicted while in a status that subjected him or her to the UCMJ." *Davis*, 63 M.J. at 176.

---

[16] Stanton does not argue before this Court, nor could he, that the AFCCA erred in declining to use its authority to correct a manifest injustice in his case. That is precisely the sort of discretionary action by the military courts that I cannot set aside as void on collateral review. *See Stanford*, 586 F.3d at 307 (noting that military cases must be "assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress" (quoting *Councilman*, 420 U.S. at 753) (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, petitioner's Motion for Summary Judgment is DENIED. Respondents' Motion for Summary Judgment is GRANTED. Petitioner's Petition for a Writ of Habeas Corpus is DISMISSED. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge